UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PEGASUS DENIZCILIK A.S.,                          :        07 Civ. 8646 (JFK)

             Plaintiff:                          :        ECF CASE

   - against -                                   :        **PROOF OF SERVICE**

FILOMEY BUSINESS LTD.,                            :

            Defendant.                     :
------------------------------------------------------------X
State of Connecticut  )
             )      ss:      Town of Southport
County of Fairfield   )

      KEVIN J. LENNON, having been duly sworn, deposes and states the following

under oath:

      1.     I am a member in good standing of the Bar of this Court and an attorney in

the law firm of Lennon, Murphy & Lennon, LLC, which represents the interests of the

Plaintiff herein.

      2.     Notice of the Plaintiff's maritime attachment, including an original

Summons and a copy of the Plaintiff's Verified Complaint and all other pleadings entered

in this matter, was provided to the Defendant, FILOMEY BUSINESS LTD. on or about

in conformity with Local Admiralty Rule B.2. *See Exhibit 1 attached.*

Dated: Southport, CT
        February 27, 2008

                                      Kevin J. Lennon

Sworn to and subscribed before me this
27th day of February 2008.

Commissioner of Superior Court

EXHIBIT "1"

# LENNON, MURPHY & LENNON, LLC – *Attorneys at Law*

The GrayBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
*phone* (212) 490-6050
*fax* (212) 490-6070

Patrick F. Lennon - *pfl@lenmur.com*
Charles E. Murphy – *cem@lenmur.com*
Kevin J. Lennon – *kjl@lenmur.com*
Nancy R. Peterson - *nrp@lenmur.com*

Tide Mill Landing
2425 Post Road
Southport, CT 06890
*phone* (203) 256-8600
*fax* (203) 256-8615

October 24, 2007

## *VIA Express Courier*

Filomey Business Ltd.
Akara Building, 24 De Castro Street
Wickhams Cay 1, Road Town,
Tortola, British Virgin Islands

**Re:    Pegasus Denizcilik A.S v. Filomey Business Ltd.**
**Docket Number: 07cv8646**
Our Reference Number: 07-1245

Dear Sir or Madam:

We represent the Plaintiff, Pegasus Denizcilik A.S, in the above referenced lawsuit. We write to advise you that pursuant to an ex parte order of maritime attachment and garnishment issued in the above referenced lawsuit, your property was attached on or about October 16, 2007 at The Bank of New York in the amounts of $72,659.4 and $10,000.

Please not a Pre-trial Conference has been scheduled for January 3, 2008 in Courtroom 20-C at 9:45 a.m. We enclose a copy of the court Notice for the conference.

Please find enclosed herein a copy of all pleadings filed in the above referenced lawsuit including, but not limited to, the Summons and Complaint. Please also find enclosed copies of the ExParte Order and Writ of Maritime Attachment and Garnishment as well as a copy of the Judge's rules. If you have any questions or concerns, please contact us at your convenience. This letter is sent pursuant to Local Rule B.2 of the Local Rules for the United States District Court for the Southern District of New York.

Kind regards,

Mary Fedorchak

/Enclosures

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Southern _____ District of _____ New York

PEGASUS DENIZCILIK A.S.

V.

FILOMEY BUSINESS LTD.

SUMMONS IN A CIVIL ACTION

CASE NUMBER:



07 CIV 86

TO: (Name and address of Defendant)

FILOMEY BUSINESS LTD.
Tortola, BVI

YOU ARE HEREBY SUMMONED and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Kevin J. Lennon
Lennon, Murphy & Lennon, LLC
The Gray Bar Building
420 Lexington Ave., Suite 300
New York, NY
10170
(212) 490-6050
kjl@lenmur.com

an answer to the complaint which is served on you with this summons, within _____ 30 _____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

**J. MICHAEL McMAHON**

OCT 0 5 2007

CLERK

(BY) DEPUTY CLERK

DATE

Oct. 5. 2007 12:23PM   Ehren, Murphy & Lennon LLC          No. 1904   P. 2

AO 440 (Rev. 2/01) Summons in a Civil Action

| RETURN OF SERVICE | |
|---|---|
| Service of the Summons and complaint was made by me[1] | DATE |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

   Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL  $0.00 |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____
                    Date                    *Signature of Server*


                                            *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

Oct. 5. 2007 12:27PM    non. Murphy & Lennon LLC                    No. 1994   P. 32

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------X
PEGASUS DENIZCILIK A.S.,          :

                Plaintiff,        :     **ECF CASE**

        - against -              :

FILOMEY BUSINESS LTD.,           :

                Defendant.        :
---------------------------------X

JUDGE KEENAN

$07$ Civ. $CIV$ 8646

OCT 0 5 2007

### DISCLOSURE OF INTERESTED PARTIES PURSUANT TO FEDERAL RULE 7.1

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure to enable Judges and

Magistrates of the Court to evaluate possible disqualification or recusal, the undersigned attorney

of record for the Plaintiff certifies that the following are corporate parents or U.S. companies that

hold 10% or more of its stock: None.

Dated: October 5, 2007
       New York, NY

                        The Plaintiff,
                        PEGASUS DENIZCILIK A.S.

                        By:

                        Kevin J. Lennon
                        Charles E. Murphy

                        LENNON, MURPHY & LENNON LLC
                        The GrayBar Building
                        420 Lexington Avenue, Suite 300
                        New York, NY 10170
                        (212) 490-6050 - phone
                        (212) 490-6070 - facsimile
                        kjl@lenmur.com
                        cem@lenmur.com

Oct. 3. 2007 12:24PM    ̄ ̄non, Murphy & Lennon LLC    No. 1994    P. 5

LENNON, MURPHY & LENNON LLC
Attorneys for Plaintiff
PEGASUS DENIZCILIK A.S.
Kevin J. Lennon
Charles E. Murphy
The GrayBar Building
420 Lexington Avenue, Suite 300
New York, NY 10170
(212) 490-6050 - phone
(212) 490-6070 - facsimile

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

07 CIV 8646

------------------------------------------------X
PEGASUS DENIZCILIK A.S.,        :    07 Civ, _____ ( )
                                :
                Plaintiff,      :    ECF CASE
                                :
        - against -             :
                                :            OCT 0 3 2007
FILOMEY BUSINESS LTD.,          :
                                :
                Defendant.      :
------------------------------------------------X

## VERIFIED COMPLAINT

Plaintiff, PEGASUS DENIZCILIK A.S. (hereinafter referred to as "PEGASUS" or

"Plaintiff"), by and through its attorneys, Lennon, Murphy & Lennon LLC, as and for its

Verified Complaint against the Defendant, FILOMEY BUSINESS LTD. (hereinafter referred to

as "FILOMEY" or Defendant) alleges, upon information and belief, as follows:

    1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333. Jurisdiction over this

matter is also present pursuant to the Federal Arbitration Act, 9 United States Code § 1 *et seq.*,

and this Court's federal question jurisdiction, 28 United States Code § 1331.

    2.    At all times material to this action, Plaintiff was, and still is, a foreign company

duly organized and operating under the laws of Turkey.

Oct. 5. 2007 12:24PM    Lennon. Murphy & Lennon LLC    No. 1994    P. 6

3.    Upon information and belief, Defendant FILOMEY was, and still is, a foreign corporation or other business entity organized under and existing by virtue of foreign law, with a place of business in Tortola, British Virgin Islands.

4.    By a charter party dated October 8, 2004 PEGASUS, as disponent owner, chartered the commercial motor vessel KRISSA (hereinafter referred to as the "vessel") to FILOMEY for the carriage of about 6,775 tons of steel cargo from Eregli, Turkey to Camden, New Jersey.

5.    During the course of the charter party FILOMEY failed to remit payment to PEGAUS for load port demurrage[1]. Despite repeated demands for payment of the outstanding demurrage, FILOMEY failed to ever satisfy this debt to PEGASUS.

6.    As a result of FILOMEY'S aforesaid breach of the charter party, PEGASUS has sustained damages in the total principal amount of $46,177.08, exclusive of arbitration costs and attorneys fees.

7.    The aforesaid charter party provides that disputes will be settled in London arbitration with English law to apply. London arbitration has now been completed and the arbitrators have issued their *First Final Arbitration Award* finding in favor of PEGASUS and denying FILOMEY's counterclaim. See attached hereto as Exhibit "1" a true and accurate copy of the *First Final Arbitration Award*.

8.    PEGASUS as the prevailing party was awarded the following amounts in the London arbitration:

        a.    Demurrage in the sum of $45,022.65;

---

[1] Demurrage is a liquidated damage for delay set forth in the charter party that requires a vessel charterer to pay the vessel owner when the vessel is prevented from the loading or discharging of cargo within the stipulated laytime (i.e., the maximum time permitted in the charter party for cargo operations).

2

b.      6.75% interest, compounded quarterly, on the sum of $45,022.65 from

February 1, 2005 until the date of payment by FILOMEY. The current interest due from

FILOMEY on the principal sum due for demurrage is $8,814.40. The total interest due until the

date of payment, estimated at February 1, 2008, is $10,012.72;

c.      PEGASUS' legal fees incurred in London arbitration which as best as may

be presented estimated are £5,204 or $10,613.06;

d.      7.25% interest, compounded quarterly, on the sum of $10,613.06 from

February 9, 2007 until the date of payment by FILOMEY. The current interest due from

FILOMEY on the principal sum due for PEGASUS' legal costs is $506.81. The total interest

due until the date of payment, estimated at February 9, 2008, is $790.66;

e.      PEGASUS' arbitration fees incurred in London arbitration which were

£4,025 or $8,209.03; and

f.      7.25% interest, compounded quarterly, on the sum of $8,209.03 from

February 27, 2007, that date that PEGASUS paid said fees, until the date of reimbursement of

said fees by FILOMEY. The current interest due from FILOMEY on the principal sum due for

PEGASUS' arbitration costs is $363.25. The total interest due until the date of payment,

estimated at February 9, 2008, is $611.53.

9.      PEGASUS seeks recovery of items (a) – (f) described in Paragraph 8 in the sum

total of $75,259.65.

10.      PEGASUS also seeks recovery of its legal fees and costs incurred herein for

obtaining security for its claim pursuant to Supplemental Rule B and the costs of recognizing and

enforcing its London arbitration award against FILOMEY in New York. As best as may be

presently estimated it is expected that its legal fees and costs will be $7,500.

3

11. Upon information and belief and following a good faith investigation, Plaintiff avers that the Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees within the District which are believed to be due and owing to the Defendant.

12. The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendant held by any garnishee(s) within the District for the purpose of obtaining personal jurisdiction over the Defendant, and to secure the Plaintiff's claim as described above.

13. The Plaintiff also seeks an Order from this Court recognizing, confirming and enforcing PEGASUS' London arbitration award pursuant to 9 U.S.C. §§ 201 *et seq*.

**WHEREFORE**, Plaintiff prays:

A. That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Complaint, failing which default judgment be entered against it in the sum of **$82,759.65**;

B. That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also

4

pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds up to the amount of $82,759.65 belonging to, due or being transferred to, from, or for the benefit of the Defendant, including, but not limited to, such property as may be held, received or transferred in Defendant's name, or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking/financial institutions and/or other institutions or such other garnishees to be named, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C.    That pursuant to 9 U.S.C. §§ 201 *et seq.* this Court recognize and confirm PEGASUS' London arbitration award rendered on the claims had herein as a judgment of this Court;

D.    That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

E.    That this Court award Plaintiff the attorneys' fees and costs incurred in this action which, as best as may be presently estimated, will be $7,500; and

F.    That the Plaintiff has such other, further and different relief as the Court may deem just and proper.

5

Oct. 5. 2007 12:24PM    Lennon, Murphy & Lennon LLC    No. 1904    P. 10

Dated: New York, NY
October 5, 2007

The Plaintiff,
PEGASUS DENIZCILIK A.S.

By: _____

Kevin J. Lennon
Charles E. Murphy

LENNON, MURPHY & LENNON, LLC
The Gray Bar Building
420 Lexington Ave., Suite 300
New York, NY 10170
Phone (212) 490-6050
Fax (212) 490-6070
kjl@lenmur.com
cem@lenmur.com

## ATTORNEY'S VERIFICATION

State of New York   }
                    }    ss.:    City of New York
County of New York  }

1.    My name is Charles E. Murphy.

2.    I am over 18 years of age, of sound mind, capable of making this

Verification, and fully competent to testify to all matters stated herein.

3.    I am a partner in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the

Plaintiff.

4.    I have read the foregoing Verified Complaint and know the contents

thereof and believe the same to be true and accurate to the best of my knowledge, information

and belief.

5.    The reason why this Verification is being made by the deponent and not

by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now

within this District.

6.    The source of my knowledge and the grounds for my belief are the

statements made, and the documents and information received from, the Plaintiff and agents

and/or representatives of the Plaintiff.

7.    I am authorized to make this Verification on behalf of the Plaintiff.

Dated:    New York, NY
          October 5, 2007

Charles E. Murphy

7

Oct. 5. 2007 12:25PM    Lennen, Murphy & Lennon L.C    No. 1904    P. 12

EXHIBIT "1"

Oct. 5. 2007 2:25PM    Lennon, Murphy & Lennon LLC    No. 1904   P. 13

IN THE MATTER OF THE ARBITRATION ACT 1996

AND

IN THE MATTER OF AN ARBITRATION

BETWEEN

Pegasus DenizcilIk A.S.                                    Claimants
                                                          (Disponent owners)

and

Filomey Business Ltd                                      Respondents
                                                          (Charterers)

"KRISSA"

Charterparty dated 8th October 2004

FIRST FINAL ARBITRATION AWARD

2

IN THE MATTER OF THE ARBITRATION ACT 1996

AND

IN THE MATTER OF AN ARBITRATION

BETWEEN

Pegasus Denizcilik A.S.                              Claimants
                                                     (Disponent owners)

and

Filomary Business Ltd                               Respondents
                                                    (Charterers)

"KRISSA"

Charterparty dated 8th October 2004

FIRST FINAL ARBITRATION AWARD

WHEREAS:

1. By a Charterparty on the GENCON form, incorporating additional terms as agreed
   between the parties on 8th October 2004 ("the Charterparty"), the Claimants who are
   the disponent owners ("the Owners") chartered their m.v. "KRISSA" to the
   Respondents ("the Charterers") to load and carry about 6,775 tonnes of steel products
   from Eregli and Iskenderun to Camden.

3

2.  Clause 53 of the Charterparty provided for English law to govern the contract and for any disputes arising thereunder to be referred to arbitration in London. The parties subsequently agreed that the London Maritime Arbitrators Association Terms 2002 should apply to the reference.

3.  Following a dispute between the parties, the Owners appointed the undersigned Alan Oakley of Hoy's Farm, Upwick, Ware, Hertfordshire as their nominated arbitrator and the Charterers appointed the undersigned Clive Aston of 30 Hobbs Court, 2 Jacob Street, London SE1 2BG as their nominated arbitrator. We are full members of the London Maritime Arbitrators Association ("the LMAA"). We are also members of the Baltic Exchange in the City of London. The seat of this arbitration is in England.

4.  Both parties were represented by firms of London solicitors. The Owners instructed Winter Scott and the Charterers instructed Derrick French & Co.

5.  On 1st December 2005, the Owners served claim submissions and claimed the sum of US$46,177.08 in respect of outstanding load port demurrage, together with interest and costs. On 3rd February 2006, the Charterers denied liability for the Owners' claim and made a counterclaim of US$96,731.50 in respect of additional discharging costs incurred at Camden due to gear break downs, together with interest and costs. The Owners served reply submissions. However, although the Charterers were invited to serve further submissions they declined to do so.

6.  Neither party requested an oral hearing.

7.  The reasons for our award are set out in the document attached hereto which forms part of this First Final Arbitration Award.

Oct. 5. 2007 12:25PM    Lennon, Murphy & Lennon LLC                        No. 1904   P. 18

6

NOW WE, the said Alan Oakley and Clive Aston, having taken upon ourselves the burden of this reference and having carefully and conscientiously considered the submissions and correspondence put before us and having given due weight thereto and having discussed the matter between ourselves and found ourselves in agreement, DO HEREBY MAKE, ISSUE AND PUBLISH this our joint and agreed FIRST FINAL ARBITRATION AWARD as follows:

WE FIND AND HOLD that:

1)   the Owners' claim for demurrage succeeds in the sum of US$45,022.65 and no more; and

2)   the Charterers' counterclaim fails and is hereby dismissed.

WE THEREFORE AWARD AND DIRECT that:

3)   the Charterers shall forthwith pay to the Owners the sum of US$45,022.65 (forty-five thousand and twenty-two United States dollars and sixty-five cents) together with interest thereon payable at the rate of 6.75% per annum compounded at three monthly rests from 1st February 2005 until the date of payment;

4)   the Charterers shall bear and pay their own and the Owners' recoverable costs of this reference on the standard basis which, unless agreed, shall be determined by us hereafter in an Award on Costs, pursuant to Section 63(3) of the Arbitration Act 1996, on the basis set out in Section 63(5) of the Act for which purpose we hereby reserve our jurisdiction;

5)   the Charterers shall also bear the costs of this Award in the sum of £4,025 provided that if, in the first instance, the Owners shall have paid any amount in

5

respect of such costs, they shall be entitled to an immediate refund of that amount from the Charterers; and

6) the Charterers shall also pay interest on the Owners' costs awarded in paragraph 4 above and on any sum paid by the Owners in respect of the costs of this Award set out in paragraph 5 above at the rate of 7.25% per cent per annum compounded at three-monthly rests from the date hereof until payment in respect of the Owners' costs and from the date of any payment to us by the Owners in respect of the costs hereof until reimbursement of such sum by the Charterers.

THIS ARBITRATION AWARD is interim in the reference, however final as to matters decided herein. We reserve our jurisdiction to make further Award(s) in respect of matters not dealt with herein.

Given under our hands this 9th day of February 2007.

Alan Oakley

Witness

Clive Aston

Witness

Oct. 5. 2007 12:23PM    Benton, Murphy & Lennon LLC    No. 1954    P. 18

6

## "KRISSA"

### Charterparty dated 8ᵗʰ October 2004

### REASONS FOR OUR FIRST FINAL ARBITRATION AWARD

1    The m.v. "KRISSA" ("the vessel") is a 21,000 tonne deadweight bulk carrier built in
     1979. By a Charterparty agreed on 8ᵗʰ October 2004 ("the Charterparty"), the Owners
     chartered the vessel to the Charterers to load and carry about 6,775 tonnes of steel
     products from Eregli and Iskenderun to Camden. The Charterparty was performed
     and the vessel loaded about 6,673 tonnes of cargo.

2    In this dispute, the Owners claimed the sum of US$46,177.08, in respect of
     outstanding load port demurrage. The Charterers denied liability and made a
     counterclaim in the sum of US$96,731.50 in respect of additional discharging costs
     incurred due to gear break downs at the discharge port, together with interest and
     costs.

3    The issues that arise in this dispute are as follows:
     i)    the correct calculation of laytime and, if applicable, demurrage at Iskenderun;
           and
     ii)   whether the Owners are liable for further costs at the discharging port.

4    It is helpful to explain that no formal charterparty document was drawn up and that the
     fixture was evidenced by an e-mail dated 8ᵗʰ October 2004 ("the fixture recap"), which
     otherwise referred to the terms of an executed pro-forma charterparty (see exhibits 1
     and 2 of the claim submissions). Therefore, the terms set out in the fixture recap
     override those set out in the pro-forma charterparty, namely that of the "TORM
     ARAWA" charterparty dated 9ᵗʰ September 2004 ("the pro-forma charterparty") which
     terms, in turn, override those of the Gencon 1976 form charterparty. Under English
     law it is sufficient for the terms of a charterparty to be agreed orally and the contract

7

does not require to be evidenced in writing and signed by the parties.

5    In this reference, claim, defence (and counterclaim) and reply (and defence to counterclaim) submissions were served. However, despite being given every opportunity to serve further submissions, the Charterers declined to do so. Therefore, in circumstances where the Charterers only served one set of submissions and failed to respond to the Owners' reply, it is difficult to know what submissions, if any, the Charterers continued to dispute. We have therefore tried to address each issue raised by the Charterers' in their submission.

(I) Laytime and demurrage at Iskenderun:

6    The Owners claimed demurrage at Iskenderan in the amount of US$46,177.68. The Charterers denied that the Owners entitled to demurrage. The difference between the parties was the time when laytime commenced counting on 19th or 20th November 2004.

7    The Charterers contended that this was a "berth charter" as regards loading at Iskenderun, where the berth was specifically named as the Yazici berth. Therefore, the NOR given at 12:00 on Friday 19th November was invalid and was not effective until 13:00 that day when the vessel arrived at the berth. Accordingly, laytime did not commence until 08:00 on Saturday 20th November. Furthermore, since the Charterparty did not provide for time to count before the commencement of laytime, time used between 17:40 on 19th November and 08:00 on 20th November, did not count as laytime.

8    Since time only started counting at 08:00 on Saturday 20th November, the Charterers only used 24 hours laytime to load the vessel, which meant that the Owners were not entitled to demurrage under the terms of the Charterparty, which allowed one day for loading.

8

9    The Charterers contended that if it was found that the Owners were entitled to
     demurrage at Iskenderun, the terms of the Charterparty only provided for a demurrage
     rate of US$6,500 per day pro rated.

10   The Owners' evidence was that Iskenderun is the collective name of the commercial
     ports within the bay, one of which is Yazici Pier, which consists of six separate berths.
     Therefore, the Charterparty did not designate a specific berth at Iskenderun and the
     area of Yazici port did not fall within the scope of a berth charter. Therefore, the
     master was entitled to tender the NOR once the vessel was within the commercial
     limits of the port and the notice given at 12:00 on 19th November was valid.

11   The Owners argued that given the "WWWW" provision of the fixture recap (which we
     accept includes the provision of "whether in berth or not"), the master was entitled to
     tender the NOR once the vessel entered the commercial area of the port. Furthermore,
     the NOR given at 12:00 on 19th November was accepted without qualification.
     Therefore, the Charterers were estopped from denying that it was a valid NOR.
     Moreover, since the fixture recap provided for the NOR to be tendered anytime
     between 08:00 and 17:00 on weekdays and that time counted from 08:00 or 14:00, the
     fact that the vessel berthed and the Charterers accepted that the NOR was effective
     from 13:00 on 19th November, means that time started counting from 14:00 hours that
     day in any event.

12   As to the question of the correct rate of demurrage payable at Iskenderun, the Owners
     contended that the fixture recap was clear and that the rate was US$13,000 per day,
     pro rated.

13   As to our findings in the matter, the fixture recap referred to the load ports as "*1SP
     BSEA EREGLI PLUS 1SP ISKENDERUN, YAZICI BERTH*". However, despite the
     Owners' evidence that Yazicilar pier consisted of 6 berths, we consider that the
     reference to "*YAZICI BERTH*" is sufficient to make this a berth charter as far as
     Iskenderun is concerned: see Schofield "laytime and demurrage" 4th edition at
     paragraph 1.22 that a charter can be a berth charter as well as a port charter: also see
     paragraph 3.39 that a named wharf or jetty may have 2 or 3 berths on it – in this case,

9

the port information referred to the berth being 700 meters in length, able to accommodate up to 6 vessels simultaneously (depending on dimensions) – the Vessel had an LOA of 179 meters which mean that the berth could accommodate 3 or 4 vessels of a similar size.

14  Therefore, although the fixture recap included the reference to *"WWFW all ends provided w/l arrived w/l commercial limits of the port"* which includes the provision *"whether in berth or not"*, the NOR could only be tendered from the commercial limits of the port provided the berth was unavailable at the time: see Schofield paragraph 3.374.

15  There was no evidence that the berth was unavailable, Therefore, the master was only entitled to tender the NOR once the vessel arrived at YAZICI BERTH. It therefore follows that the NOR given at 12:00 on Friday 19th November was invalid. However, the Charterers accepted that it was unnecessary for the master to re-tender the NOR once the vessel arrived at the berth and therefore the NOR was effective from 13:00 on 19th November. The question therefore arises whether laytime started to count at 14:00 on 19th November as the Owners contended, or at 08:00 the following day, as the Charterers contended.

16  The Charterers referred to paragraph 22 of the pro-forma charterparty which provided as follows:

*"At load port, Notice of Readiness to be tendered in writing by cable during ordinary office hours Monday/Friday 0900/1700 hours and 0900 hours through noon on Saturday and time to count from 08:00 on the next working day".*

However, the fixture recap provided that *"AT LOAD PORTS NOR TO BE TENDERED MON 08 AM – SUN 5PM ..."* and that *"TIME TO COUNT 8 AM 2 PM ALL ENDS."* As we have made clear above, the terms of the fixture recap prevail over those of the pro-forma charterparty. Therefore, since it is clear – and the Charterers accept – that the NOR was effective at 13:00 hours, on our reading of the fixture recap time started counting from 14:00 hours on 19th November, rather than 08:00 the

10

following day. Therefore, the Charterers' reliance on clause 22 of the pro forma is misplaced since it is overridden by the express provision of the fixture recap.

17    As to the applicable demurrage rate at Iskenderun, the fixture recap provides that *"DEMURRAGE USD 13,000 FD PR FD AT EREGLI AND CAMDEN, HD AT ISKENDERUN."* The respective load rates were 1,000 tonnes SHINC at Eregli and 1 day SHINC at Iskenderun, which required separate laytime calculations for each port in order to calculate whether demurrage or despatch had been earned. Therefore, any experienced commercial man reading the fixture recap would realise that the demurrage rate of US$13,000 per day applied to all load and discharge ports, whilst the following abbreviated wording referred to despatch and should be read as " ... free despatch at Eregli and Camden, half despatch at Iskenderun".

18    In conclusion, we find that the Owners' laytime and demurrage calculation at exhibit 5 of the claim submission is correct and that they are entitled to demurrage for a period of 3 days 13 hours 15 minutes at Iskenderun. However, pursuant to the terms of box 20 of Part 1 and clause 14 of Part II of the Charterparty, 2.5% commission is payable on demurrage. We have therefore awarded the Owners the net sum of US$45,022.65 (US$46,177.08 less 2.5%) in respect of demurrage earned at Iskenderun.

(II) Discharging costs:

19    The Charterers alleged that during the discharge operation at Camden, the Owners were in breach of vessel's gear and maintenance warranties – which contained clear and unlimited obligations to keep the vessel's gear in good working order so that it could work continuously and without interruption. However, as a result of the vessel's gear breaking down (or becoming inefficient), the Charterers had to hire shore cranes and incurred additional stevedoring costs. They therefore sought to recover damages of US$10,525 relating to overtime costs and the cost of hiring shore gear, together with increased stevedore costs of US$96,731.50. The Owners had previously paid the stevedores US$10,525 in respect of 50% of overtime costs and the cost of hiring shore cranes. However, the Charterers sought recover of 100% of

11

these costs, together with the increased stevedoring costs.

20  The Owners accepted that between 20th and 23rd December 2004, the Vessel did
    encounter difficulties with her gear at Camden. However, their evidence was that
    this was due to freezing weather conditions. The problem was remedied on 22nd
    December, when anti-freeze liquid was added to the gear hydraulics. The only other
    inefficiently was between 12:35 and 13:15 on 29th December, when the transmitter
    on derrick no. 4 failed and had to be repaired.

21  The Owners relied on the provision in the fixture recap that the "CHARTERERS TO
    HAVE FREE USE OF VESSEL CRANES WHICH TO BE KEPT IN GOOD
    WORKING ORDER. ALL VSL'S CRANES ARE ABLE TO WORK
    SIMULTANEOSLY AND SERVE ALL VSL'S HATCHES." Therefore, their obligation
    with regard to the vessel's inefficiency was not unlimited or continuous as alleged by
    the Charterers. They also denied that they were liable for any discharging costs under
    an F.I.O. charterparty. In any event, the Charterers continued to employ shore cranes
    after the vessel's gear resumed full operation on 22nd December.

22  Although the Owners agreed to bear 50% of the overtime costs and the cost of hiring
    shore cranes, their evidence was that the Charterers agreed to share the costs equally.

23  As to our findings in this matter, the Charterers alleged that the Owners were in
    breach of the vessel's gear and maintenance warranties under the Charterparty at
    Camden. However, the Charterers' submissions caused us some difficulty for several
    reasons.

24  First, although the evidence was that the vessel's gear was deficient between 06:30
    on 20th December and 14:00 on 22nd December, the Charterers' statement of facts
    indicated that the gear operated normally thereafter: see entries for 24th, 27th, 28th and
    29th December – bad weather or holidays effected work on the missing days.
    However, the same evidence also shows that the Charterers (or the Receivers)
    continued to employ shore cranes on 24th, 27th and 28th December – often working
    simultaneously with the vessel's gear.

12

25    Secondly, although the Charterers failed to refer to specific Charterparty provisions,
      it seemed to us that their remedy for deficient gear lay under clause 48 and/or 49,
      which provided as follows:

      Clause 48:
      *"In the event of vessel crane's breakdown time to count pro-rata to the actual
      number of gangs worked."*

      Clause 49:
      *"In the event of vessel crane's breakdown Charterers have the option of employing
      shore cranes at Owners' expense and time to count in accordance with clause 49
      (sic), subject to Owners' approval which to be advised."*

26    Given the evidence before us, we would have expected the Charterers to rely on
      clause 49 and to have provided an invoice for the cost of hiring the shore crane for
      the period when the vessel's gear was deficient. The Charterers appeared to suggest
      that the vessel's gear was deficient through to 28th December (when a shore crane
      was still being employed) and that they claimed the entire cost of hiring shore cranes
      – though they did not include any evidence of the overall cost or the cost of overtime.
      As it was, the statement of facts and the extract from the vessel's log book recorded
      that the gear became deficient at about 06:40 on 20th December, but that shore cranes
      were operating by 08:45 hours. Therefore, what little time might have been lost to the
      discharging operation would have fallen within the scope of clause 48 – the same
      applied to the period between 12:35 and 13:15 on 29th December. However, since the
      Charterers did not make their claim on this basis, it must be assumed that they
      accepted that no time was lost on 20th December or 29th December.

27    Despite the severe weather conditions at Camden, we take the view that the Owners
      were in breach of the vessel's gear and maintenance warranties under the
      Charterparty. They were clearly weather working days and the gear was capable of
      working with the correct hydraulic fluid. Furthermore, it seems to us that the Owners
      accepted this view when they agreed to pay 50% of stevedore overtime costs and the

13

cost of the crane hire in the amount of US$10,525. As to whether the Owners should have paid 100% of these costs, the Charterers bear the burden under clause 49 of showing the correct level of costs applicable for the time of the inefficiency – which we say was between 06:30 on 20th December and 14:00 on 22nd December. However, in view of the evidence as to costs, we have based our decision on the fact that the Charterers (or perhaps the Receivers) chose to continue to use shore cranes until 28th December and that the cost of US$21,050 (2 x $10,525) was the overall cost of hiring the cranes and overtime. Therefore, since the Charterers/Receivers continued to use shore cranes, the Charterers are liable for a proportion of the overall costs. Since the evidence was that the vessel's gear was deficient between 20th and 22nd December and that the Charterers thereafter used the shore cranes for three days, we consider that the apportionment of 50:50 is fair to both parties given the evidence available to us. Since the Owners have already paid 50% of these costs, they have no further liability to the Charterers.

28    Finally, we turn to the Charterers' allegation that they incurred additional stevedoring costs due to the Owners breach relating to the Vessel's gear. The Charterers claimed the difference between the stevedore's initial estimate of US$102,096 and the final cost of US$198,827.50 i.e. a difference of UD$96,731.59. However, the Charterers' evidence (the e-mail sent on 9th February 2005) suggested that the stevedores charged only US$171,477.50 for discharging the vessel, which appeared to include some overtime costs (see the entry between 19th and 29th December for 21 hours overtime amounting to US$9,450). It is unclear whether this was part of the overtime costs claimed under the first part of the counterclaim.

29    The evidence relating to this part of the Charterers' counterclaim is extremely limited. Although the Charterers claimed the sum of US$96,731.50, their evidence was at best confusing and, at worse, deficient. For example, the Charterers' evidence relied on a message that they had sent to the Owners and did not include any evidence from the stevedores of their final costs or why those costs increased substantially from the original estimate. Furthermore, the Charterers did not refer us to any specific provisions of the Charterparty upon which they relied.

Oct. 5. 2007 12:26PM    Lennon, Murphy & Lennon LLC                    No. 1994   P. 26

14

30   The additional stevedoring costs clearly did not fall within the scope of clauses 48 or
     49 or generally for Owners' account under an FIO charterparty. Therefore, absent an
     express provision in the Charterparty – and we were not referred to such – we take
     the view that the Charterers cannot recover additional stevedoring charges, the
     Charterers' remedy being limited to that specified in clauses 48 and 49 of the
     Charterparty. However, regardless of this interpretation of the Charterparty, the
     Charterers' evidence was deficient in any event and they failed to prove that the
     stevedore costs had increased, as alleged or the true level of that increase. It therefore
     follows that this head of the Charterers' counterclaim also fails.

(III) Quantum:

31   In conclusion, we found that the Owners' claim succeeds in the sum of
     US$45,022.65 and that the Charterers' counterclaim fails and is dismissed.

(IV) Interest:

32   We have awarded interest on the sum of US$45,022.65 at a commercial rate from 1st
     February 2005, by which date all issues of demurrage should have been agreed and
     settled between the parties.

(V)  Costs:

33   In accordance with the normal rule that costs follow the event, the Charterers shall
     bear their own and the Owners' recoverable costs, together with our costs of the
     reference.

Oct. 5. 2007 12:26PM    Freehon, Murphy & Lennon LLC    No. 1904    P. 27

15

## IN THE MATTER OF THE ARBITRATION ACT 1996

### AND

## IN THE MATTER OF AN ARBITRATION

BETWEEN

Pegasus Denizcilik A.S.
Claimants
(Disponent owners)

and

Filomey Business Ltd
Respondents
(Charterers)

"KRISSA"

Charterparty dated 8th October 2004

### FIRST FINAL ARBITRATION AWARD

Oct. 5. 2007 12:27PM    Lennon, Murphy & Lennon    USDC SDNY    No. 1904    P. 33

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/5/07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

07 CIV 8646

--------------------------------------X

PEGASUS DENIZCILIK A.S.,
                                              :
                        Plaintiff,            :
                                              :    ECF CASE
        - against -                           :
                                              :    EX PARTE ORDER
FILOMEY BUSINESS LTD.,                         :    FOR PROCESS
                                              :    OF MARITIME
                        Defendant.            :    ATTACHMENT
--------------------------------------X

WHEREAS, on October 5, 2007, Plaintiff, PEGASUS DENIZCILIK A.S., filed a

Verified Complaint herein for damages amounting to **$82,759.65** inclusive of interest, costs and

reasonable attorney's fee, and praying for the issuance of Process of Maritime Attachment and

Garnishment pursuant to Rule B of the Supplemental Admiralty Rules for Certain Admiralty and

Maritime Claims of the Federal Rules and Civil Procedure; and

WHEREAS, the Process of Maritime Attachment and Garnishment would command that

the United States Marshal or other designated process server attach any and all of the

Defendant's property within the District of this Court; and

WHEREAS, the Court has reviewed the Verified Complaint and the Supporting

Affidavit, and the conditions of Supplemental Admiralty Rule B appearing to exist;

NOW, upon motion of the Plaintiff, it is hereby:

ORDERED, that pursuant to Rule B of the Supplemental Rules for Certain Admiralty

and Maritime Claims, the Clerk of Court shall issue Process of Maritime Attachment and

Garnishment against all tangible or intangible property, credits, letters of credit, bills of lading,

effects, debts and monies, electronic funds transfers, freights, sub-freights, charter hire, sub

charter hire or any other funds or property up to the amount of **$82,759.65** belonging to, due or

being transferred to, from or for the benefit of the Defendant, including but not limited to such property as may be held, received or transferred in Defendant's name(s), or as it ay be held, received or transferred for its benefit at, moving through, or within the possessi: n, custody or control of banking/financial institutions and/or other institutions or such other g: mishees to be named, or later identified, on whom a copy of the Process of Maritime Attachment and Garnishment may be served; and it is

ORDERED that supplemental process enforcing the Court's Order may be issued by the Clerk upon application without further Order of the Court; and it is further

ORDERED that following initial service by the U.S. Marshal or other de: ignated process server upon each garnishee, that supplemental service of the Process of Maritime Attachment and Garnishment, as well as this Order, may be made by way of facsimile transmission or other verifiable electronic means, including e-mail, to each garnishee; and it is further

ORDERED that service on any garnishee as described above is deemed effective continuous service throughout the day from the time of such service through the opening of the garnishee's business the next business day; and it is further

ORDERED that pursuant to Federal Rule of Civil Procedure 5(b)(2)(D) each garnishee may consent, in writing, to accept service by any other means.

Dated: October 5, 2007

SO ORDERED:

U.S.D.J.

A CERTIFIED COPY
J. MICHAEL McMAHON,                CLER:

BY
                DEPUTY CLERK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

Pegasus Denizcilik -                    :

                                        :

                    Plaintiff(s)         :        07 __ CIV. 8646

                                        :

        -vs-                                      Notice of a Pretrial
                                                  Conference
                                        :

Filomey Business Ltd.                    :

                    Defendant(s)         :

------------------------------------------------x


         Counsel are directed to appear in Courtroom 20-C

on  January 3 2008          at  9:45 am          , for

a pretrial conference, for the purpose of discussing the status

of this case.  Please notify your adversary as to the date of

this conference.

         This conference will not be adjourned except

by order of the Court.



                    SO ORDERED.


DATED:    NEW YORK, NEW YORK

          October 10, 2007        John F. Keenan

                                  JOHN F. KEENAN
                                  U.S.D.J.

Oct. 5. 2007 12:27PM    Lennon, Murphy & Lennon LLC                    No. 1904    P. 36

_07cv8646_
Docket no.

## THE PRESIDENT OF THE UNITED STATES OF AMERICA

To the Marshal of the Southern District of New York (or designated process server) - GREETINGS:

WHEREAS a Verified Complaint has been filed in the United States District Court for the Southern District of New York on the 5th day of October 2007 by

### PEGASUS DENIZCILIK A.S.,

Plaintiff,

against

### FILOMEY BUSINESS LTD.,

Defendant,

in a certain action for breach of maritime contract wherein it is alleged that there is due and owing from the Defendant to the said Plaintiff the amount of $82,759.65 and praying for process of maritime attachment and garnishment against the said Defendant,

WHEREAS, this process is issued pursuant to such prayer and requires that a garnishee(s) shall serve their answer(s), together with answers to any interrogatories served with the Complaint, within 20 days after service of process upon him and requires that Defendant shall serve its answer within 30 days after process has been executed, whether by attachment of property or service on the garnishee.

NOW, THEREFORE, we do hereby command you that if the said Defendant cannot be found within the District you attach goods and chattels to the amount sued for; and if such property cannot be found that you attach other property, credit and effects to the amount sued for in the hands of:

ABN Amro, American Express Bank, Bank of America, Bank of New York Mellon, Barclay's Bank, BNP Paribas, Calyon, Citibank, Deutsche Bank, HSBC Bank USA Bank, J.P. Morgan Chase, Societe Generale, Standard Chartered Bank, UBS, and/or Wachovia Bank N.A.

to wit: property, letters of credit, deposits, funds, credits, bills of lading, debts, settlement agreements, or other assets, tangible or intangible, in whatever form of:

### FILOMEY BUSINESS LTD.

and that you promptly after execution of this process, file the same in this Court with your return thereon.

WITNESS, the Honorable _John F. Keenan_ Judge of said Court, this _9_ day of October 2007, and of our Independence the two-hundred and thirty-first

Lennon, Murphy & Lennon, LLC                    J. MICHAEL McMAHON
Attorneys for Plaintiff                                        Clerk
The Gray Bar Building
420 Lexington Ave., Suite 300                    By _____
New York, NY 10170                                        Deputy Clerk
Phone (212) 490-6050

NOTE: *This Process is issued pursuant to Rule E(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure and/or New York Civil Practice Law and Rules, Article 62.*

LENNON, MURPHY & LENNON LLC
Attorneys for Plaintiff
PEGASUS DENIZCILIK A.S.
Kevin J. Lennon
Charles E. Murphy
The GrayBar Building
420 Lexington Avenue, Suite 300
New York, NY 10170
(212) 490-6050 - phone
(212) 490-6070 - facsimile

JUDGE KEENAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

07 CIV 8645

----------------------------------------X
PEGASUS DENIZCILIK A.S.,            :      07 Civ. _____ (      )
                                   :
              Plaintiff,            :      ECF CASE
                                   :
        - against -                 :
                                   :
FILOMEY BUSINESS LTD.,             :
                                   :
              Defendant.            :
----------------------------------------X

## AFFIDAVIT IN SUPPORT OF PRAYER FOR MARITIME ATTACHMENT

State of Connecticut    )
                        )    ss: SOUTHPORT
County of Fairfield     )

        Kevin J. Lennon, being duly sworn, deposes and says:

        1.      I am a member of the Bar of this Court and represent the Plaintiff herein. I am

familiar with the facts of this case and make this Affidavit in support of Plaintiff's prayer for the

issuance of a Writ of Maritime Attachment and Garnishment, pursuant to Rule B of the

Supplemental Admiralty Rules of the Federal Rules of Civil Procedure.

## DEFENDANT IS NOT PRESENT IN THIS DISTRICT

2. I have attempted to locate the Defendant, FILOMEY BUSINESS LTD., within this District. As part of my investigation to locate the Defendant within this District, I checked the telephone company information directory, as well as the white and yellow pages for New York listed on the Internet or World Wide Web, and did not find any listing for the Defendant within this district. Finally, I checked the New York State Department of Corporations' online database which showed no listing or registration for this Defendant. I was also unable to find any information to indicate that the Defendant has a general or managing agent within this District.

3. I submit based on the foregoing that this Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

4. Upon information and belief, the Defendant has, or will have during the pendency of this action, tangible and intangible property within this District and subject to the jurisdiction of this Court, held in the hands of garnishees within this District, which are believed to be due and owing to the Defendant.

5. This is Plaintiff's first request for this relief made to any Court.

## PRAYER FOR RELIEF FOR ORDER ALLOWING SPECIAL PROCESS SERVER

6. Plaintiff seeks an Order pursuant to Rule 4(c) of the Federal Rules of Civil Procedure, for an Order appointing the undersigned, Patrick F. Lennon, Charles E. Murphy, Nancy Peterson or any other partner, associate, paralegal or agent of Lennon, Murphy & Lennon, LLC, including Gotham Process Servers, to be appointed, in addition to the United States Marshal, to serve the Ex Parte Order and Process of Maritime Attachment and Garnishment

2

Case 1:07-cv-08646-JFK    Document 7    Filed 02/27/2008    Page 36 of 44

. Oct. 5, 2007 12:27PM ═══Lennon, Murphy & Lennon LLC          ═══          No. 1904    P. 30 .

together with any interrogatories, upon the garnishee(s), together with any other garnishee(s) who (based upon information developed subsequent hereto by the Plaintiff) may hold assets of, for, or on account of, the Defendant.

7.     Plaintiff seeks to serve the prayed for Ex Parte Order and Process of Maritime Attachment and Garnishment with all deliberate speed so that it may be fully protected against the potential of being unable to satisfy a judgment ultimately obtained by Plaintiff and entered against the Defendant.

8.     To the extent that this application for an Order appointing a special process server with respect to this attachment and garnishment does not involve a restraint of physical property, there is no need to require that the service be effected by the United States Marshal as it involves simple delivery of the Ex Parte Order and Process of Maritime Attachment and Garnishment to the various garnishes to be identified in the writ.

## PRAYER FOR RELIEF TO SERVE LATER IDENTIFIED GARNISHEES

9.     Plaintiff also respectfully requests that the Court grant it leave to serve any additional garnishee(s) who may, upon information and belief obtained in the course of this litigation, to be holding, or believed to be holding, property of the Defendant, within this District. Obtaining leave of Court at this time to serve any later identified garnishees will allow for prompt service of the Process of Maritime Attachment and Garnishment without the need to present to the Court amended Process seeking simply to identify other garnishee(s).

## PRAYER FOR RELIEF TO DEEM SERVICE CONTINUOUS

10.     Further, in order to avoid the need to repetitively serve the garnishees/banks, Plaintiff respectfully seeks further leave of the Court, as set out in the accompanying Ex Parte Order for Process of Maritime Attachment, for any process that is served on a garnishee to be

3

deemed effective and continuous service of process throughout any given day on which process

is served through the next day, provided that process is served the next day, and to authorize

service of process via facsimile or e-mail following initial *in personam* service.

Dated: October 5, 2007
      Southport, CT

                                       Kevin J. Lennon

Sworn and subscribed to before me
this 5th day of October, 2007.

Notary Public

4

PRACTICES OF
JUDGE JOHN F. KEENAN
United States District Court
U.S. Courthouse
500 Pearl Street, Room 1930
New York, New York 1007-1312

Courtroom: Room 20C
Courtroom Deputy: William Ryan          Chambers: Room 1930
212-805-0106                                      212-805-0220/1

Unless otherwise ordered by Judge Keenan, matters before Judge Keenan shall be conducted in accordance with the following practices:

## 1. Communications With Chambers

**A. Letters.** Except as otherwise provided below, communications with chambers shall be by letter, with copies simultaneously delivered to all counsel. Copies of correspondence between counsel shall not be sent to the Court.

**B. Telephone Calls.** Except as provided in Paragraph 1(D) below, telephone calls to chambers are permitted only in emergency situations requiring immediate attention. In such situations only, call chambers at 212-805-0220.

**C. Faxes.** Faxes to chambers are not permitted.

**D. Docketing, Scheduling, and Calendar Matters.** For docketing, scheduling and calendar matters, call William Ryan at 212-805-0106 between 9:00 A.M. and 4:00 P.M.

**E. Requests for Adjournments or Extensions of Time.** All requests for adjournments or extensions of time must state (1) the original date, (2) the number of previous requests for adjournment or extension, (3) whether these previous requests were granted or denied, and (4) whether the adversary consents, and, if not, the reasons given by the adversary for refusing to consent. If the requested adjournment or extension affects any other scheduled dates, a proposed Revised Scheduling Order (reflecting only business days) must be attached. If the request is for an adjournment of a court appearance, absent an emergency it shall be made at least 48 hours prior to the scheduled appearance.

F. **Applications to the Court.**

(1) **Draft Orders.** In order to promote rapid disposition of letter applications, parties are encouraged to submit draft orders along with their requests for Court action.

(2) **Discovery.** If discovery has been referred to a Magistrate Judge, all applications concerning discovery should be directed to the Magistrate Judge. If discovery has not been referred, any application for a modification of the discovery schedule should be made in writing, and must note all previous applications and state whether opposing counsel consents to the requested modification.

G. **Applications for Orders to Show Cause**

(1) **Generally.** As required by Local Rule 6.1(d), when proceeding by Order to Show Cause, the accompanying affidavit must sufficiently state why procedure other than notice of motion is necessary. All Orders to Show Cause must be approved by the Orders and Appeals Clerk at 500 Pearl Street. After approval, the party requesting relief must deliver the original Order to Show Cause with accompanying papers (including a memorandum of law and draft order) and courtesy copies to Chambers. The party will be contacted by Chambers when the papers are ready to be picked up and filed.

(2) **Default Judgments.** Applications for entry of default judgments must be brought on by Order to Show Cause served upon the party to be defaulted.

(3) **Ex Parte Temporary Restraining Orders.** Ex parte temporary restraining orders ordinarily will not be granted. Parties are reminded that this relief requires the posting of a bond.

2. **Motions**

A. **Pre-Motion Conferences in Civil Cases.** For discovery motions, follow Local Civil Rule 37.2 For motions other than discovery motions, a pre-motion conference with the court is required before making any motion, except for motions in lieu of an answer, cross-motions, or motions for reargument. To arrange a pre-motion conference, the moving party shall submit a letter not to exceed three pages in length setting forth the basis for the anticipated motion.

B. **Motions Pursuant to Fed. R. App. P. 4(a)(4)(A).**
Paragraph A above does NOT apply to any of the motions
described in Federal Rule of Appellate Procedure 4(a)(4)(A).
A pre-motion conference is not required before making such
motions, which should be filed when served.

C. **Courtesy Copies.** Courtesy copies of all motion
papers, marked as such, should be submitted for chambers.
Courtesy copies of pleadings, marked as such, shall be
submitted to chambers, as soon as practicable after filing.

D. **Memoranda of Law.** Unless prior permission has been
granted, memoranda of law in support of and in opposition to
motions are limited to 25 pages, and reply memoranda are
limited to 10 pages. Memoranda of 10 pages or more shall
contain a table of contents. Copies of unpublished
authority cited in a memorandum should accompany the
submission.

E. **Filing of Motion Papers.** No motion papers shall be
filed until the motion has been fully briefed. Each party
shall file its motion papers on the date the last reply
memorandum is due. The moving party is further obligated to
furnish to chambers a <u>full</u> set of courtesy copies of the
motion papers.

F. **Oral Argument on Motions.** Parties may request oral
argument by letter at the time their moving or opposing or
reply papers are filed. The court will determine whether
argument will be heard and, if so, will advise counsel of
the argument date.

3. **Pretrial Procedures**

A. Once a ready for trial date has been fixed by the
Court, the parties shall comply with the Pre-trial
Requirements of Judge Keenan. Copies of the Pre-trial
Requirements will be distributed to counsel on the date upon
which the ready for trial date is fixed.

B. **Ready for Trial Calendar.** Counsel for cases on the
ready for trial calendar will be notified by Chambers not
less than forty-eight (48) hours before the case is called.
Applications to have a case removed from the calendar for a
period of time must be in writing and must state the reasons
for the removal, the time period requested, and whether
opposing counsel consents to the request.

**Mary E. Fedorchak**

| | |
|---|---|
| **From:** | Worldwide_Express_Email_Notifier [support@wwexship.com] |
| **Sent:** | Tuesday, October 30, 2007 7:56 PM |
| **To:** | Mary E. Fedorchak; logs@wwexship.com |
| **Subject:** | Delivered_Shipments |

Our records indicate that the following shipment was delivered to:

FILOMEY BUSINESS LTD.
TORTOLA              ,       00000

Tracking Number:   8826081563
Account Number:    803172641
Shipment Reference:    1245
Shipment Description:    legal documents
Delivery Date/Time:    10/26/07 10:48
Signed/Released by:    A CASTILLO
Click here for more tracking info:
http://track.dhl-usa.com/atrknav.asp?ShipmentNumber 8826081563

1



WAYBILL:8826081563

NWKRTHX

**DOX**

From: LENNON MURPHY & LENNON
Lennon, Murphy and Lennon
2425 POST ROAD
SUITE 301
SOUTHPORT, CT 06890
UNITED STATES Tel:203-256-8600

To: Filomey Business Ltd.
Sir or Madam
Akara Building, 24 De Castro Street
Wickhams Cay1, Road Town
Tortola, British VI
VIRGIN IS BRITISH

Tel:203-256-8600

POSTCODE: RTH

ORIGIN:
NWK
Sender's ref:
1245

Parcels:
1/1

Description: legal documents

Weight: Letter for 1 pcs
Date: 2007-10-24

Customs Value:    1 USD for 1 pcs
These commodities, technology, or software were exported from the United States in accordance with the Export Administration regulations. Diversion contrary to U.S. law prohibited. Shipment may be voided via intermediate stopping place which DHL deems appropriate.

Worldwide Express

---

Create New International Shipment

**SENDER'S RECEIPT**
Airbill#:        8826081563
To(Company):
Filomey Business Ltd.
Wickhams Cay1, Road Town

Tortola, British VI
VIRGIN IS BRITISH
Attention To: Sir or Madam
Phone#:      203-256-8600

Sent By:      Lennon, Murphy and Lennon
Phone#:      203-256-8600

View International Pending Shipments
Rate Estimate:        24.16
Protection:           None Required     Amount: $0
Description:          legal documents
Weight:              Letter
Dimensions:          0 X 0 X 0
Ship Ref:            1245
Service Level:        International Express
(Est. delivery is within two business days of customs clearance)
Special Service:
Date Printed:         2007-10-24
Bill Shipment To:     Sender
Bill To Account:      803172641
Ship Date:            2007-10-24

---

DHL Signature (optional)_____ Route_____ Date_____ Time_____



**Worldwide EXPRESS.**

For Tracking, please go to www.dhl-usa.com or call 1-800-CALL-DHL
Thank you for shipping with DHL Worldwide Express

# Certificate of Origin

The undersigned:

for:   LENNON MURPHY & LENNON
2425 POST ROAD
SUITE 301
SOUTHPORT, CT 06890

declares that the following mentioned goods shipped via: DHL CORPORATION

on the date:                    10/24/2007 *(mm/dd/yyyy)*

cosigned to:   Filomey Business Ltd.
Akara Building, 24 De Castro Street
Wickhams Cay1, Road Town
Tortola, British VI null VIRGIN IS BRITISH
Sir or Madam   203-256-8600

are the product of the countries described below.

| Line | Description of Merchandise | HTS# | Country of Origin | Quantity | Unit |
|------|----------------------------|------|-------------------|----------|------|
| 1    | legal documents            |      | United States     | 1        | EA   |

Sworn before me this day:

_____
*(Day, Month, Year)*

_____
(Notary Signature)

_____
*(Day, Month, Year)*

_____
(Signature of Owner or Agent)

Close This Window

# Commercial Invoice

LENNON MURPHY & LENNON.
2425 POST ROAD
SUITE 301
SOUTHPORT, CT 06890 US

| Shipper/Exporter:<br><br>LENNON MURPHY & LENNON<br>2425 POST ROAD<br>SUITE 301<br>SOUTHPORT, CT 06890 | Waybill Number:<br>8826081563 | |
| --- | --- | --- |
| | Export Date (dd/MMM/yyyy):<br>24/Oct/2007 | |
| | Weight:<br>0(lb) | |
| Receiver/Consignee:<br><br>Filomey Business Ltd.<br>1245<br>Akara Building, 24 De Castro Street<br>Wickhams Cay 1, Road Town<br>Tortola, British VI VIRGIN IS BRITISH<br>203-256-8600 | Receiver Reference: | Shipper Reference:<br>1245 |
| | Country Of Ultimate Destination:<br>VIRGIN IS BRITISH | |
| | Exporting Carrier:<br>DHL Express Corporation | |
| Receiver Tax ID/VAT#: | Terms Of Trade: | |

| Line | Description of Merchandise | HTS# | Country of Origin | Quantity | Unit | Unit Value | Line Total |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 1 | legal documents | | United States | 1 | EA | 1 | 1.0 |

| Package Marks: | Misc. charges: |
| --- | --- |
| Shipment Comments: | Invoice Total:    1.0 |

**These commodities, technology or software were exported from the United States in accordance with the Export Administration Regulations. Diversion contrary to U.S. law is prohibited.**
Signature:_____ Date:_____

Close this window